Attorney or Party Name, Address, Telephone & FAX
Nos., State Bar No. & Email Address

**R. Grace Rodriguez, Esq.**
**21000 Devonshire Street, Suite 111**
**Chatsworth, CA 91311**
**(818) 734-7223 Fax: (818) 338-5821**
State Bar Number:**196657 CA**
**ECF2@LORGR.COM**

FOR COURT USE ONLY

☐ *Debtor appearing without an attorney*
☑ *Attorney for Debtor*

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:
**Mary Kristin Burak**

CASE NUMBER: **1:22-bk-10501-MB**

CHAPTER   **7**

### DEBTOR'S NOTICE OF MOTION AND MOTION
### TO AVOID LIEN UNDER 11 U.S.C. § 522(f)
### (REAL PROPERTY)

Debtor(s).

[No hearing required unless requested under LBR 9013-1(o)]

| **Creditor Name:** | Dan Bryan Floyd, Successor Trustee of Trust of Loretta M. Coha and Equity Trust Trust Compay |
|---|---|

**TO THE CREDITOR, ATTORNEY FOR CREDITOR AND OTHER INTERESTED PARTIES:**

1.  **NOTICE IS HEREBY GIVEN** that Debtor moves this court for an order, pursuant to LBR 9013-1(o) upon notice of opportunity to request a hearing (i.e., without a hearing unless requested), avoiding a lien on the grounds set forth below.

2.  **Deadline for Opposition Papers:**
    Pursuant to LBR 9013-1(o), any party opposing the motion may file and serve a written opposition and request a hearing on this motion.  If you fail to file a written response within 14 days of the date of service of this notice of motion and motion, plus an additional 3 days unless this notice of motion and motion was served by personal delivery or posting as described in Federal Rules of Civil Procedure 5(b)(2)(A)-(B), the court may treat such failure as a waiver of your right to oppose this motion and may grant the requested relief.

3.  **Type of Case:**
    a. ☑ A voluntary petition under Chapter ☑ 7  ☐ 11 ☐ 12  ☐ 13 was filed on: <u>4/27/2022</u>
    b. ☐ An involuntary petition under Chapter ☐ 7  ☐ 11 was filed on: _____
       ☐ An order of relief under Chapter ☐ 7  ☐ 11 was entered on: _____
    c. ☐ An order of conversion to Chapter ☐ 7  ☐ 11 ☐ 12  ☐ 13 was entered
       on: _____
    d. ☐ Other:

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure.  "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2017*                              Page 1                    **F 4003-2.1.AVOID.LIEN.RP.MOTION**

4. **Procedural Status:**
   a. ☑ Name of trustee appointed (*if any*):     DAVID KEITH GOTTLIEB
   b. ☐ Name of Attorney of Record for Trustee (*if any*): _____

5. Debtor claims an exemption in the subject real property under:
   a. ☑ California Code of Civil Procedure § 704.730 (Homestead): Exemption amount claimed on schedules:
      $ 626,400.00
   b. ☐ California Code of Civil Procedure § __ Exemption amount claimed on schedules: $__
   c. ☐ Other statute (*specify*): _____

6. Debtor's entitlement to an exemption is impaired by judicial lien, the details of of the lien are as follows:
   a. Date of entry of judgment (*specify*):  11/20/2012
   b. Case name (*specify*):  LORETTA M. COHA and EQUITY TRUST COMPANY vs. SIRIUS FINANCIAL, et al.
   c. Name of court:  Los Angeles County Superior Court, North Valley District - Chatsworth, California
   d. Docket number (*specify*)  PC053448
   e. Date (*specify*)  11/10/2016  and place (*specify*)  Los Angeles County Recorders Office, Los Angeles, CA
      of recordation of lien
   f. Recorder's instrument number (*specify*):  20161409460

7. The property claimed to be exempt is as follows:
   a. Street address, city, county and state, where located, (*specify*):  10141 Nevada Ave. Chatsworth, CA 91311 ,
      Los Angeles County, California

   b. Legal description (*specify*):  **Lot No: 93 Subdivision Name: Section 13 Chatsworth Park
      SEC/TWN/RNG/MER: SEC 13 TWN 02N RNG 17W, Los Angeles County,
      City of Chatsworth, California**
               ☐ See attached page
      _____

8. Debtor acquired the property claimed exempt on the following date (*specify*):  1/24/2003

9. Debtor alleges that the fair market value of the property claimed exempt is: $ 975,000.00

10. The subject property is encumbered with the following liens (*list mortgages and other liens in order of priority and
    place an "X" as to the lien to be avoided by this motion*):

| Name of Lien Holder | "X" | Date Lien Recorded | Original Lien Amount | Current Lien Amount | Date of Current Lien |
|---|---|---|---|---|---|
| Rushmore Mortgage Svcng. | ☐ | 2/7/2003 | $ 270,000.00 | $ 292,601.25 | 2/21/2017 |
| Chase Mortgage | ☐ | 7/11/2003 | $ 100,000.00 | $ 247,426.48 | 11/1/2019 (Modification) |
| Dan Bryan Floyd, Successor Trustee of Trust of Loretta M. Coha and Equity Trust Trust Compay | ☑ | 12/27/2012 | $ 448,255.69 | $ 733,672.47 | 11/10/2016 |

11. Debtor attaches copies of the following documents in support of the motion (as appropriate):
    a. ☑ Schedule C to bankruptcy petition listing all exemptions claimed by Debtor -**Exhibit A**
    b. ☐ Appraisal of the property
    c. ☑ Documents showing current balance due as to the liens specified in paragraph 10 above -**Exhibit B**
    d. ☑ Recorded Abstract of Judgment -**Exhibit C**
    e. ☐ Recorded Declaration of Homestead (Homestead Exemption)
    f. ☑ Declaration(s) **Declaration of Debtor in Support Motion - Exhibit D**
    g. ☑ Other (*specify*):     Assignment of Judgment to Dan Bryan Floyd, Successor Trustee of Trust of
       Loretta M. Coha and Equity Trust Trust Compay . **Exhibit E**

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017            Page 2          **F 4003-2.1.AVOID.LIEN.RP.MOTION**

12. Total number of attached pages of supporting documentation: __106__

13. Debtor declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct [28 U.S.C. § 1746(1) and (2)].

WHEREFORE, Debtor requests that this court issue an order avoiding Creditor's lien in the form of the Attachment to this motion.

Executed on (date): __5/4/2022__

_____
Signature of Debtor

**Mary Kristin Burak**
_____
Printed name of Debtor

Date:    __5/4/2022__

**/s/ R. Grace Rodriguez, Esq.**
_____
Signature of Attorney for Debtor

**R. Grace Rodriguez, Esq.**
_____
Printed name of Attorney for Debtor

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2017*                                      Page 3                        **F 4003-2.1.AVOID.LIEN.RP.MOTION**

## ATTACHMENT TO MOTION/ORDER
## (11 U.S.C. § 522(f): AVOIDANCE OF REAL PROPERTY JUDICIAL LIENS)

This court makes the following findings of fact and conclusions of law:

1. **Creditor Lienholder/Servicer:** <u>Dan Bryan Floyd, Successor Trustee of Trust of Loretta M. Coha and Equity Trust</u>
<u>Trust Compay</u>   .

2. **Subject Lien:** Date and place of recordation of lien (*specify*): <u>11/10/2016, Los Angeles County Recorders Office,</u>
<u>Los Angeles, California</u>   . Recorders instrument number or document recording number: <u>20161409460</u>

3. **Collateral:** Street address, city, county and state, where located, legal description and/or map/book/page
number, including county of recording: <u>10141 Nevada Ave. Chatsworth, CA 91311; Lot No: 93 Subdivision</u>
<u>Name: Section 13 Chatsworth Park SEC/TWN/RNG/MER: SEC 13 TWN 02N RNG 17W, Los Angeles</u>
<u>County, City of Chatsworth, California</u>   . ☐ See attached page.

4. **Secured Claim Amount**
   a. Value of Collateral:..................................................................... $ <u>975,000.00</u>
   b. Amounts of Senior Liens (reducing equity in the property to which the Subject Lien can attach):
      (1) First lien: Rshmore.................................................. ($ <u>292,601.25</u> )
      (2) Second lien: JPMorgan Chse.................................... ($ <u>247,426.48</u> )
      (3) Third lien: ............................................. ............... ($_____ )
      (4) Additional senior liens (*attach list*): ........................... ($_____ )
   c. Amount of Debtor's exemption(s): ......................................... ($ <u>626,400.00</u> )
   d. Subtotal: ....................................................................... ($ <u>1,166,427.73</u> )
   e. Secured Claim Amount (negative results should be listed as -$0-): ............. $ <u>-0-</u>

   Unless otherwise ordered, any allowed claim in excess of this Secured Claim Amount is to be treated as a
   nonpriority unsecured claim and is to be paid pro rata with all other nonpriority unsecured claims (in Chapter
   13 cases, Class 5A of the Plan).

5. **Lien avoidance:** Debtor's request to avoid the Subject Lien is granted as follows. The fixing of the Subject Lien
   impairs an exemption to which Debtor would otherwise be entitled under 11 U.S.C. § 522(b). The Subject Lien is
   not a judicial lien that secures a debt of a kind that is specified in 11 U.S.C. § 523(a)(5) (domestic support
   obligations). The Subject Lien is void and unenforceable except to the extent of the Secured Claim Amount, if
   any, listed in paragraph 4.e. above.

☐ See attached page(s) for more liens/provisions.

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                         Page 4                  **F 4003-2.1.AVOID.LIEN.RP.MOTION**

# EXHIBIT A

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                                    Page  5                    **F 4003-2.1.AVOID.LIEN.RP.MOTION**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Mary Kristin Burak** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| 10141 Nevada Ave. Chatsworth, CA 91311 Los Angeles County<br>APN: 2745-002-116<br>Value based upon comps and Debtor's experience as realtor.<br>Line from *Schedule A/B*: 1.1 | $975,000.00 | ☑ $626,400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.730 |
| 1999 Honda Passport 215000 miles<br>Debtor's Vehicle<br>Location: 10141 Nevada Ave., Chatsworth CA 91311<br>Line from *Schedule A/B*: 3.1 | $1,016.00 | ☑ $1,016.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.010 |
| Debtor's/Spouse's Miscellaneous Household Goods including Cooking/Eating/Food Prep/Serving Accessories/Tools/Utensils; Foodstuffs; Furniture; Home Maintenance Products and Tools; Linens and Softgoods; Major and Minor Appliances.<br>Location: 10141 Nevada Ave<br>Line from *Schedule A/B*: 6.1 | $15,000.00 | ☑ $15,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

Debtor 1    **Mary Kristin Burak**                                   Case number (if known) _____

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Debtor's/Spouse's Home Electronics - Cellphones, Computers-Desktop/Laptop, TVs**<br>Location: 10141 Nevada Ave., Chatsworth CA 91311<br>Line from *Schedule A/B*: **7.1** | $1,600.00 | ☒ $1,600.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Debtor's/Spouse's Clothing**<br>Location: 10141 Nevada Ave., Chatsworth CA 91311<br>Line from *Schedule A/B*: **11.1** | $500.00 | ☒ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.020 |
| **Debtor's/Spouse's Miscellaneous Bracelets, Earrings, Necklaces, Rings, Watches, Wedding Jewelry**<br>Location: 10141 Nevada Ave., Chatsworth CA 91311<br>Line from *Schedule A/B*: **12.1** | $1,200.00 | ☒ $1,200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.040 |
| **Cash on Hand at Time of Filing**<br>Location: 10141 Nevada Ave., Chatsworth CA 91311<br>Line from *Schedule A/B*: **16.1** | $100.00 | ☒ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.070 |
| **Debtor's/Spouse's Joint Checking Accounts with CitiBank**<br>Location: 10141 Nevada Ave., Chatsworth CA 91311<br>Line from *Schedule A/B*: **17.1** | $150.00 | ☒ $150.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 704.070 |
| **Debtor's Real Estate Sales License (non-Transferable)**<br>Location: 10141 Nevada Ave., Chatsworth CA 91311<br>Line from *Schedule A/B*: **27.1** | $0.00 | ☒ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No

   ☒ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☒ No

       ☐ Yes

# EXHIBIT B

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2017*                                    Page  6                    **F 4003-2.1.AVOID.LIEN.RP.MOTION**



# Mortgage Statement

**Rushmore Loan Management Services**
PO Box 514707
Los Angeles, CA 90051
www.rushmorelm.com
(888) 504-6700

AB 01 085136 28484 H 310 A
JEROME M BURAK
MARY K BURAK
10141 NEVADA AVENUE
CHATSWORTH, CA 91311-2833

| | |
|---|---|
| Statement Date: | 04/11/2022 |
| Account Number | 7600881240 |
| Payment Due Date | 05/01/2022 |
| Payments received after the statement date are not reflected. | |
| **Reinstatement Amount Due** [8] | **$48,666.89** |
| If payment is received after 05/16/2022, a $63.47 late fee will be charged. | |

## Notice

Rushmore Loan Management Services LLC is a Debt Collector attempting to collect a debt.

**Bankruptcy Notice.** If you are in bankruptcy or if your obligation to repay this loan was discharged in bankruptcy, this informational notice is sent to you in order to comply with statutory requirements. It is not an attempt to collect a debt. You may disregard information relating to payment remittance. You are not obligated to make payments and any amount(s) you do pay Rushmore is at your discretion. Please note, however, Rushmore reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

## Account Information

| | |
|---|---|
| Property Address: | 10141 NEVADA AVENUE |
| | CHATSWORTH AREA, CA 91311 0000 |
| Outstanding Principal [3] | $273,054.12 |
| Deferred Balance [2] | $10,234.62 |
| Interest Rate | 4.50000% |
| 2nd Lien Interest Rate | 0.00000% |
| Recoverable Advances [4] | $6,012.04 |
| Prepayment Penalty | No |
| 2nd Lien Prepayment Penalty | No |

## Explanation of Amount Due [1]

| | |
|---|---|
| Overdue Payments | $42,439.44 |
| Total Fees and Charges | $215.41 |
| Recoverable Advances [4] | $6,012.04 |
| **Reinstatement Amount Due** [8] | **$48,666.89** |
| **Reinstatement Amount As Of** [9] | **04/11/2022** |
| Partial Payment (Unapplied) [1] | $20.07 |
| **Acceleration Amount** [8] [9] | **$326,311.34** |
| **Acceleration Amount As Of** [8][9] | **04/11/2022** |

## Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied) [1] | $0.00 | $0.00 |
| Recoverable Advances [4] | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |



# Your Mortgage. Simplified.

- Easy and free payment options
- Instant access to your loan information
- Account alerts to stay informed

*Move to Rushmore's new online and mobile experience today!*

Sign up at MyRushmoreLoan.com, or search "My Rushmore Loan" in the Apple App Store or Google Play

## If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287. Rushmore Loan Management Services LLC is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices. Rushmore is customer-focused and we believe in providing the highest level of customer care. We treat all of our customers with respect, courtesy and integrity. We understand the importance of homeownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment. We encourage our customers to contact us at (888) 504-7300 to discuss assistance programs we may have available for you. We also encourage you to contact us to discuss any other issues you may be having with your mortgage. We believe that open and timely communications is a key to our relationship with you. We encourage all of our customers to continue to visit our website (www.rushmorelm.com) to access loan information, make payments, download forms, or obtain answers to questions about your account.


EQUAL HOUSING LENDER

## Important Information

**(1) Partial Payment:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

**(2) Deferred Balance:** The amount of your principal balance that is deferred as part of the terms of a loan modification.

**(3) Outstanding Principal:** This is your Loan Balance only, not the pay off amount, and does not include any Deferred Balance.

**(4) Recoverable Advances:** Disbursements for servicing-related expenses (non-escrow expenses) paid with servicer funds rather than escrow funds, which are recovered from you, the borrower.

**(5) Amount Due:** IF YOU ARE IN FORECLOSURE OR BANKRUPTCY, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this Statement.

**(8) THIS IS NOT A PAYOFF STATEMENT.** The Total Amount Due to Reinstate the loan and the Accelerated Amount are estimates based on information reasonably available and will be accepted through this date. IF YOUR LOAN IS IN DEFAULT, there may be additional outstanding fees or costs incurred but not yet billed as of the dates listed above for which you are responsible under the terms of your loan. Additional interest, fees , and charges may continue to accrue. Pro rata mortgage insurance premiums not yet paid are not included in the Accelerated Amount. Please contact us at the number listed on this statement to obtain a current reinstatement or payoff amount. Unless you pay off your loan before 05/01/2022, another monthly payment of $1,793.66 will become due.

**(9) IF YOU HAVE RECEIVED A JUDGMENT OF FORECLOSURE** the accelerated amount/this amount is for informational purposes only and does not reflect the judgment amount or post judgment interest.

---

### GET LOAN INFORMATION INSTANTLY
Call our convenient and easy Automated Information Hotline and receive up-to-date loan information. **JUST CALL** (888) 504-6700 from a Touch Tone Phone. For your security, you will need to enter your loan number and the last 4 digits of your social security number when requested. You may also visit our website at www.rushmorelm.com for access to loan information, make payments, request financial assistance and more!

---

### Need To Contact Us?

CUSTOMER CARE / PAYOFF STATEMENTS
Mon - Thurs 6:00 am to 7:00 pm PT
Friday 6:00 am to 6:00 pm PT

Telephone   (888) 504-6700

SEND CORRESPONDENCE TO:
Rushmore Loan Management Services LLC
Customer Care Department
P.O. Box 55004
Irvine, CA 92619-5004

NEED FINANCIAL ASSISTANCE?
COLLECTION DEPARTMENT
Telephone (888) 504-7200

HOME RETENTION
Telephone (888) 504-7300

### Payment Mailing Information:

Standard Delivery Mailing Address:
Rushmore Loan Management Services LLC
P.O. Box 514707
Los Angeles, CA 90051-4707

Overnight Delivery Service Payment Address:
Rushmore Loan Management Services LLC
15480 Laguna Canyon Rd.
Suite 100
Irvine, CA 92618

### Assistance with Escrow Information:

HAZARD/HOMEOWNERS INSURANCE
Telephone (866) 735-2998
Fax  (866) 257-4121

PROPERTY TAX INFORMATION/ASSISTANCE
Telephone (844) 323-3780
Fax   (817) 826-0265

SEND INSURANCE BILLS AND POLICIES TO:
Rushmore Loan Management Services LLC
P.O. Box 692409
San Antonio, TX 78269-2409

SEND TAX BILLS FOR ESCROWED/IMPOUNDED LOANS TO:
Rushmore Loan Management Services LLC
P.O. Box 9214
Coppell, TX 75019

### Additional Information:

SEND NOTICE OF ERROR RESOLUTION AND INFORMATION REQUEST TO:
Rushmore Loan Management Services LLC
Compliance Department
P.O. Box 52262
Irvine, CA 92619-2262

WESTERN UNION QUICK COLLECT
Code City: Rushmore
Code State: CA

STANDARD FEES
Returned Check Fee *          $25.00
* Except where restricted by state law
Other Fees are listed on
www.rushmorelm.com

---

### ANNUAL PRIVACY NOTICE
Rushmore Loan Management Services LLC provides our Annual Privacy Notice on-line, at our website: www.rushmorelm.com. A copy of the notice will be mailed to customers who request one by contacting our Customer Care Department at (888) 504-6700 or by sending a written request to our Customer Care Department at P.O. Box 55004, Irvine, CA 92619-5004. The information in the Notice has not changed from last year.

Important Notice: Under the Fair Credit Reporting Act, you have the right to notify us if you believe we have reported inaccurate information about your account to any Consumer Reporting Agency. Such notices should be sent in writing and include your complete name, current address, social security number, account number, specific item of dispute and reason why you believe the information reported is in error. Send your notice to: P.O. Box 52262 Irvine, CA 92619-2262.

---

### Housing Counselor Resources
The U.S. Department of Housing and Urban Development (HUD) sponsors non-profit homeownership counseling agencies across the country. Call 800-569-4227 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of HUD-approved agencies in your area.



# Mortgage Statement



**Rushmore Loan Management Services**
PO Box 514707
Los Angeles, CA 90051
www.rushmorelm.com
(888) 504-6700

Statement Date:      04/11/2022
Account Number:      7600881240

## Transaction Activity (10/01/2021 - 04/11/2022)

| Date | Description | Principal | Interest | Escrow | Fees | Other | Total |
|------|-------------|-----------|----------|--------|------|-------|-------|
| 10/19 | VALUE/HOA/INSP COST | | | | | -15.00 | -15.00 |
| 10/19 | VALUE/HOA/INSP COST | | | | | -1.50 | -1.50 |
| 11/16 | VALUE/HOA/INSP COST | | | | | -15.00 | -15.00 |
| 11/16 | VALUE/HOA/INSP COST | | | | | -1.50 | -1.50 |
| 11/29 | COUNTY/PARISH | | | -2,209.04 | | | -2,209.04 |
| 11/29 | ESCROW ADVANCE | | | 2,209.04 | | | 2,209.04 |
| 12/14 | VALUE/HOA/INSP COST | | | | | -1.50 | -1.50 |
| 12/14 | VALUE/HOA/INSP COST | | | | | -15.00 | -15.00 |
| 01/14 | VALUE/HOA/INSP COST | | | | | -15.00 | -15.00 |
| 01/14 | VALUE/HOA/INSP COST | | | | | -1.50 | -1.50 |
| 02/15 | VALUE/HOA/INSP COST | | | | | -15.00 | -15.00 |
| 02/15 | VALUE/HOA/INSP COST | | | | | -1.50 | -1.50 |
| 02/16 | LATE CHARGE ASSESS | | | | -63.47 | | |
| 02/25 | ATTORNEY FEES | | | | | -540.00 | -540.00 |
| 03/07 | VALUE/HOA/INSP COST | | | | | -90.00 | -90.00 |
| 03/11 | FC/BK/DIL/EVIC COST | | | | | -570.00 | -570.00 |
| 03/15 | VALUE/HOA/INSP COST | | | | | -1.50 | -1.50 |
| 03/15 | VALUE/HOA/INSP COST | | | | | -15.00 | -15.00 |
| 03/16 | LATE CHARGE ASSESS | | | | -63.47 | | |
| 03/25 | COUNTY/PARISH | | | -2,209.03 | | | -2,209.03 |
| 03/25 | ESCROW ADVANCE | | | 2,209.03 | | | 2,209.03 |
| 04/05 | ATTORNEY FEES | | | | | -593.22 | -593.22 |
| 04/05 | FC/BK/DIL/EVIC COST | | | | | -2.12 | -2.12 |
| 04/05 | FC/BK/DIL/EVIC COST | | | | | -101.00 | -101.00 |
| 04/05 | FC/BK/DIL/EVIC COST | | | | | -4.00 | -4.00 |
| 04/05 | FC/BK/DIL/EVIC COST | | | | | -36.00 | -36.00 |
| 04/05 | FC/BK/DIL/EVIC COST | | | | | -75.00 | -75.00 |

## **DELINQUENCY NOTICE**

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home.
As of 04/11/2022, you are 710 days delinquent on your mortgage loan, dating to 05/01/2020.

Recent Account History.

*    Payment Due 04/01/2022: Unpaid balance of $1,793.66

*    Payment Due 03/01/2022: Unpaid balance of $1,793.66

*    Payment Due 02/01/2022: Unpaid balance of $1,793.66

*    Payment Due 01/01/2022: Unpaid balance of $1,793.66

*    Payment Due 12/01/2021: Unpaid balance of $1,793.66

*    Payment Due 11/01/2021: Unpaid balance of $1,793.66

**\*\*DELINQUENCY NOTICE\*\***

\*  **You must pay this amount $48,666.89 to reinstate your loan.**
**IF YOU ARE IN FORECLOSURE OR BANKRUPTCY,** the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this Statement.

**Your Loan is in Foreclosure**

The date of the first Notice of Filing is 03/31/2022.

## ADDITIONAL NOTICES

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this document is being sent for information purposes only and does not constitute personal liability with respect to the debt.



**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

### Notice of Error Resolution & Information Request Procedures

The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

*If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:*

Rushmore Loan Management Services LLC
P.O. Box 52262
Irvine, CA 92619-2262

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

## HUD STATEMENT

Pursuant to section 169 of the Housing and Community Development Act of 1987, you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD approved housing counseling agencies by calling the HUD nationwide toll-free telephone at 1-800-569-4287.

## Equal Credit Opportunity Act Disclosure

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552 or Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

CHASE

700 Kansas Lane
LA4-6633
Monroe, LA 71203

Statement Period
03/11/2022 - 04/09/2022

| Minimum Payment Due Date | Minimum Payment Due |
|---|---|
| 05/01/2022 | $4,290.58 |



MARY K BURAK
JEROME M BURAK
10141 NEVADA AVE
CHATSWORTH CA 91311-2833

A late fee of $41.66 may apply if payment received after 05/16/2022

## Line of credit information

| | |
|---|---|
| Account number | 3300033342 |
| Property address | 10141 Nevada Ave Chatsworth, CA 91311 |
| Unpaid principal balance¹ | $239,312.90 |
| Credit line | $245,000.00 |
| Available for use | $0.00 |
| Revolving rate (Until 10/2024) | 2.62500% |
| Deferred balance | $10,829.68 |
| Principal paid year to date | $0.00 |
| Interest paid year to date | $0.00 |
| Maturity date | 10/2059 |

## Account summary

| | |
|---|---|
| Previous balance | $241,462.26 |
| Payments/credits | $0.00 |
| Other credits/debits | $0.00 |
| Fees chrgd/advances | $41.66 |
| Interest charged | $516.33 |
| New balance¹ | $242,020.25 |
| Escrow payment | $0.00 |

## Explanation of amount due

| | |
|---|---|
| Principal | $316.79 |
| Finance charges | $516.33 |
| Monthly payment | $833.12 |
| New fees/charges | $41.66 |
| Prior fees/charges | $83.32 |
| Original missed payment date | 01/01/2022 |
| Past due amount | $3,332.46 |
| Total amount due on 05/01/2022 | $4,290.58 |

## Reminder

Your tax statement



Your tax statement is available now at
www.chase.com/TaxStatement. Paper tax
statements were mailed by January 31.

## Important account information



Please see the attached Delinquency Information page for more details on your account status.

## Ways to pay

Convenient and free ways to make your payment:

 Enroll in automatic payments at www.chase.com or back of statement coupon.

 Make your payment at www.chase.com

 Pay by phone with our dedicated number at 1-833-PAY-CHASE (1-833-729-2427).

 Mail your payment with the coupon below.

## Resources

 www.chase.com/MyHomeEquity

 Call customer service 1-800-848-9380 (24/7 automated line)
Monday - Friday 8 a.m. - 8 p.m. (ET)
Saturday 9 a.m. - 6 p.m. (ET)

 Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9380 o visita www.chase.com/Statement

Mail your payment with the coupon below

## Transaction activity

| Transaction date | Description | Total received | Principal | Interest | Escrow | Fees/ Advances | Unapplied funds |
|---|---|---|---|---|---|---|---|
| 03/16/2022 | LATE CHARGE ASSESSMENT<br>*Revolving* | $0.00 | | | | $41.66 | |

## Additional information

Your line of credit is suspended. This means that you can't draw from your line of credit at this time. However, it's important that you make your monthly payments by your scheduled due date. If you have any questions, please call us at 1-800-836-5656 Monday through Friday from 8 a.m.– 8 p.m. or Saturday from 9 a.m.– 6 p.m. Eastern Time.

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. These benefits and protections may include protection from foreclosure or eviction without a court order, and in some cases, interest rate and fee benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. In addition, some state laws may allow Servicemembers to request a payment deferral.

For more information, please call Chase Military Services at 1-877-489-0110.

## Revolving and lock information

| Description | Balance as of 03/11/2022 | Total payments and credits | Principal balance as of 04/09/2022 | Annual percentage rate (APR) | Daily periodic rate | Unpaid interest for billing period | Payment due 05/01/2022 |
|---|---|---|---|---|---|---|---|
| Revolving | $241,462.26 | $0.00 | $239,312.90 | 2.82500% | 0.0071918% | $516.33 | $958.10 |
| INTONLYBK3 | $0.00 | $0.00 | $0.00 | 0.00000% | 0.0000000% | $0.00 | $0.00 |

## Finance charge calculations

| Type of balance | Dates | Days in billing cycle | Annual percentage rate (APR) | Daily periodic rate | Balance subject to interest rate | Finance charges |
|---|---|---|---|---|---|---|
| Purchases, Balance Transfers, Cash Advances - *Revolving* | 03/11/2022 - 04/09/2022 | 30 | 2.82500% | 0.0071918% | $239,312.90 | $516.33 |
| Purchases, Balance Transfers, Cash Advances - *INTONLYBK3* | 03/11/2022 - 04/09/2022 | 30 | 0.00000% | 0.0000000% | $0.00 | $0.00 |





Please detach and return the bottom portion of this statement with your payment using the enclosed envelope.

00033000333421 323001 000A3312 00099976 00429058 00009

# Delinquency information

### Important notice

**You've missed one or more payments and your Home Equity Line of Credit is in default.** This summary highlights the status of your account, your missed payments and how to get help.

We encourage you to call us at 1-800-848-9380 so we can help you apply for options that may allow you to stay in your home, such as a repayment plan, forbearance plan or loan modification, or otherwise avoid foreclosure through a short sale or deed-in-lieu of foreclosure. You can find more information on our loss mitigation options and application process at www.chase.com

You've agreed to a reinstatement where you will pay the total amount due by a specific date.

By doing this, you've taken important steps to bring your account back up to date.

### Amount due

As of 04/09/2022, $4,290.58 is required to bring your loan current.

The total fees due on your account are $124.98, which includes late fees of $124.98, NSF fees of $0.00, and other fees of $0.00. These amounts are included in the total shown above. Other fees may include charges as part of the terms of your account, permitted by applicable law, and/or we are authorized for services we completed.

This amount was calculated on the date referenced above and is good for 10 days from the date of this statement. This means it may change if additional fees are billed after this date. Call us at 1-800-848-9380 to confirm the full payment amount you owe to bring your account up to date.

### Delinquency status

**Your payment was due on 01/01/2022, and is 98 days past due. If you have already made your past-due payments, please disregard this notice.**

If you have not made past-due payments, you may be at risk of foreclosure or other fees and charges.

### Additional information

The California Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (1-877-382-4357) or www.ftc.gov

### Summary of your most recent missed payments

| Payment Due Date | Amount Remaining Past Due |
|---|---|
| 01/01/2022 | $833.12 |
| 02/01/2022 | $833.12 |
| 03/01/2022 | $833.12 |
| 04/01/2022 | $833.12 |

### Other resources

You can call the U.S. Department of Housing and Urban Development at 1-800-569-4287, the U.S. Department of the Treasury sponsored HOPE Hotline number at 1-888-995-HOPE (1-888-995-4673) to get free assistance, or visit www.HopeNow.com You can also find a nonprofit HUD-approved counselor who can provide the information and assistance you may need to avoid foreclosure by using the search tool at www.hud.gov/offices/hsg/sfh/hcc/fc/ These HUD-approved housing counseling agencies found on www.HUD.gov can also help you with your household budgeting at no charge.

### Equal credit opportunity act notice

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20006

### Information for servicemembers and their dependents

If you or any occupant of your home are or recently were on active military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from



# EXHIBIT C

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2017*                                        Page  7                          **F 4003-2.1.AVOID.LIEN.RP.MOTION**

# RUSHMORE

Copy



**L E A D   S H E E T**

03 0378930

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

FEB  07  2003  AT 8 A.M.

SPACE ABOVE THIS LINE FOR RECORDERS USE

 

## TITLE(S)

| FEE | | D.T.T. |
|---|---|---|

FEE $_____  RR

| CODE 20 | D.A. FEE Code 20 | $ 2.00 |
|---|---|---|
| CODE 19 | | |
| CODE 9___ | | |

LEADS NOTIFICATION

Assessor's Identification Number (AIN)
To Be Completed By Examiner OR Title Company In Black Ink          Number of Parcels Shown

 

THIS FORM IS NOT TO BE DUPLICATED

Copy

03  0378930



**SOUTHLAND TITLE**

Recording Requested By:
SCME MORTGAGE BANKERS, INC.

Return To:
SCME MORTGAGE BANKERS, INC.

6265 GREENWICH DRIVE, #200
SAN DIEGO, CA  92122

Prepared By:

────────────────[Space Above This Line For Recording Data]────────────────

# DEED OF TRUST

LOAN NO.:
ESCROW N                                                    MIN
                                                            MERS

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated          JANUARY 24, 2003
together with all Riders to this document.

**(B) "Borrower"** is
JEROME M. BURAK AND MARY K. BURAK, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF
SURVIVORSHIP

Whose mailing address is
10141 NEVADA AVENUE, (CHATSWORTH AREA),LOS ANGELES, CALIFORNIA  91311
Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
SCME MORTGAGE BANKERS, INC., A CALIFORNIA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

Initials:

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01
VMP-6A(CA) (0005)                    Page 1 of 15        LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (07/02)





Copy



Lender's address is
6265 GREENWICH DRIVE, #200, SAN DIEGO, CA 92122

**(D) "Trustee"** is
STEWART TITLE COMPANY OF SAN DIEGO, A CALIFORNIA CORPORATION

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated     JANUARY 24, 2003
The Note states that Borrower owes Lender
TWO HUNDRED SEVENTY THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X X X   Dollars
(U.S. $ 270,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    FEBRUARY 01, 2033

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "RIDERS"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ 1-4 Family Rider
☐ Graduated Payment Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ Balloon Rider     ☐ Rate Improvement Rider     ☐ Second Home Rider
☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP-6A(CA) (0009)            Page 2 of 15            Form 3005 1/01

03 0378930

Copy

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY               of               LOS ANGELES            :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

THE NORTH 60B FEET OF THE SOUTH 120 FEET OF THE NORTH 300 FEET OF THE WEST 266 FEET OF
LOTS 93 AND 94, SECTION 13, CHATSWORTH PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 30, PAGE(S) 91, OF
MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
EXCEPT THE WEST 105 FEET.

Parcel ID Number: 2745-002-116                    which currently has the address of
                    10141 NEVADA AVENUE                                    [Street]
          (CHATSWORTH AREA),LOS ANGELES          [City], California     91311   [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0005)                    Page 3 of 15                    Initials:            Form 3005  1/01

03 0378930

Copy

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials

03  0378930

Copy

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

VMP-6A(CA) (0008)                              Page 6 of 18                              Form 3005  1/01

Initials

03 0378930

Copy

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP-6A(CA) (0005)                          Page 8 of 15                          Form 3005  1/01

Initials: _____

03  0378930

Copy

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

03 0378930

Copy

*9*

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance.".Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

VMP-6A(CA) (0005)                          Page 8 of 15                          Initials _____                  Form 3005 1/01

**03  0378930**

Copy

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

03 0378930

Copy

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP-6A(CA) (0005)                          Page 10 of 15                          Initials:              Form 3005  1/01

03  0378930

Copy

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

VMP-6A(CA) (0005)                    Page 11 of 15                    Form 3005  1/01

03 0378930

Copy

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

03  0378930

Copy

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VMP-6A(CA) (0005)                    Page 13 of 15                    Initials: _____    Form 3005 1/01

03 0378930

Copy

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                                        -Witness

_____
                                                        -Witness


_____ (Seal)
JEROME M. BURAK                     -Borrower

_____ (Seal)
MARY K. BURAK                        -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

VMP-6A(CA) (0005)                   Page 14 of 15                  Form 3005  1/01

03 0578930

Copy

State of  CALIFORNIA
County of  Los Angeles                          } ss.

On January 28, 2003        before me, Cheri Kriegler

                                                        personally appeared

JEROME M. BURAK AND MARY K. BURAK

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

CHERI KRIEGLER
COMM. # 1390813
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. JAN. 16, 2007

_____ (Seal)

VMP-6A(CA) (0005)              Page 15 of 15              Form 3005  1/01

03  0378930