Part 2



This page is part of your document - DO NOT DISCARD

## 20111242219





Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/13/11 AT 11:39AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |





LEADSHEET



201109130140057

00004666204



003507027

SEQ:
01

Daily ERDS



THIS FORM IS NOT TO BE DUPLICATED

E12

LOS ANGELES,CA                    Page 1 of 2                    Printed on 3/10/2016 9:04:23 PM
Document: AS 2011.1242219

Requested and Prepared by:
Executive Trustee Services, LLC

When Recorded Mail To:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

Loan
TS N
MIN
MERS Phone: 1-888-679-6377

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

Deutsche Bank Trust Company Americas as Trustee for RALI 2003QS6

all beneficial interest under that certain Deed of Trust dated: 01/24/2003 executed by JEROME M. BURAK AND MARY K. BURAK, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP, as Trustor(s), to STEWART TITLE COMPANY OF SAN DIEGO, A CALIFORNIA CORPORATION, as Trustee, and recorded as Instrument No. 03 0378930, on 02/07/2003, in Book XX , Page XX  of Official Records, in the office of the County Recorder of Los Angeles County, CA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: Sept 6, 2011

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR SCME
MORTGAGE BANKERS, INC., A CALIFORNIA
CORPORATION its successors and assigns



Lisa Clark
Assistant Secretary

State of Pennsylvania ss.
County of Montgomery ;

On 9/6/11 before me, Angela A. Chessbro Notary Public, personally appeared Lisa Clark who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Angela G. Chessbro

(Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Angela A. Chessboro, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires June 2, 2014
Member, Pennsylvania Association of Notaries

 

**This page is part of your document - DO NOT DISCARD**



## 20161100006



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/13/16 AT 01:38PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |

 



L E A D S H E E T



201609132830045

00012528047



007755056

SEQ:
01

DAR - Mail (Intake)




THIS FORM IS NOT TO BE DUPLICATED

 

E-692350

Document Number:~~Tz5z6047~~

Batch Number:7755056

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING █████████"BURAK"
SELLER'S LENDER ID#:  DP
OLD SERVICING #: ████████

For Value Received, Deutsche Bank Trust Company Americas as Trustee for RALI 2003-QS6 By its Attorney-in-Fact Ocwen Loan Servicing, LLC  hereby grants, assigns and transfers to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR NRZ PASS-THROUGH TRUST V at 425 Walnut street, Cincinnati, OH 45202 all its interest under that certain Deed of Trust dated 01/24/2003 , in the amount of $270,000.00, executed by JEROME M. BURAK AND MARY K. BURAK, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP to MORTGAGE ELECTRONIC REGISTRATION

SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR SCME MORTGAGE BANKERS, INC., ITS SUCCESSORS AND/OR ASSIGNS and Recorded:  02/07/2003  as Instrument No.: 03-0378930 in the County of Los Angeles, State of California.

In witness whereof this instrument is executed.

Deutsche Bank Trust Company Americas as Trustee for RALI 2003-QS6 By its Attorney-in-Fact Ocwen Loan Servicing, LLC  POA: 04/04/2014  as Instrument No.: 20140338507
On  **JUN 1 5 2016**

Ivelka Angeles,
Authorized Signer

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF FLORIDA
COUNTY OF PALM BEACH

On __JUN 1 5 2016__ , before me, _____Joe Simmons_____ , a Notary Public in and for Palm Beach County in the State of Florida, personally appeared Ivelka Angeles, Authorized Signer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Joe Simmons
Notary Expires 10/16/2017

Notary Public State of Florida
Joe Simmons
My Commission FF 083552
Expires 10/16/2017

(This area for notarial seal)




**This page is part of your document - DO NOT DISCARD**

## 20170205793




**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/21/17 AT 12:21PM**

|  |  |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |






**L E A D S H E E T**



201702210120024

00013374083



008151512

**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

2435419

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Space above for Recorder's use 

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST V**, whose address is C/O NEW RESIDENTIAL INVESTMENT CORP., 1345 AVENUE OF THE AMERICAS, 45TH FLOOR, NEW YORK, NY 10105, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST**, whose address is C/O PRETIUM MORTGAGE CREDIT MANAGEMENT, 120 SOUTH SIXTH STREET, #2100, MINNEAPOLIS, MN 55402, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 1/24/2003
Original Loan Amount: $270,000.00
Executed by (Borrower(s)): **JEROME M. BURAK AND MARY K. BURAK**
Original Trustee: **STEWART TITLE COMPANY OF SAN DIEGO, A CALIFORNIA CORPORATION**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SCME MORTGAGE BANKERS, INC., A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book N/A, Page N/A,
Document/Instrument No: **03 0378930** in the Recording District of LOS ANGELES, CA, Recorded on 2/7/2003.

Property more commonly described as: 10141 NEVADA AVENUE, LOS ANGELES, CALIFORNIA 91311

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  2/3/2017

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST V, BY PRETIUM MORTGAGE CREDIT PARTNERS / LOAN ACQUISITION, LP, ITS ATTORNEY-IN-FACT**

By: STEVE ALLISON
Title: **AUTHORIZED SIGNATORY**

Witness/Name: JONAH BOROWICK



A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of    **MINNESOTA**
County of    **HENNEPIN**

On ___2·3·17___, before me, THU VAN WITTMANN, a Notary Public, personally appeared **STEVE
ALLISON, AUTHORIZED SIGNATORY** of/for **PRETIUM MORTGAGE CREDIT PARTNERS I LOAN
ACQUISITION, LP, AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, NOT IN
ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST
V**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **MINNESOTA**
that the foregoing paragraph is true and correct. I further certify STEVE ALLISON, signed, sealed, attested and
delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

*Thu Van Wittmann*

(Notary Name): THU VAN WITTMANN
My commission expires: 01/31/2018

THU VAN WITTMANN
Notary Public
State of Minnesota
My Commission Expires
January 31, 2018



Recording Requested By:
Rushmore Loan Management
Services LLC

After Recording Return To:
Rushmore Loan Management
Services LLC
15480 Laguna Canyon Road
Irvine, California 92618

This Document Requested By:
Srdjan Njego
Rushmore Loan Management
Services LLC
15480 Laguna Canyon Road
Irvine, California 92618

Parcel ID Number: 2745-002-116

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: $270,000.00                                      Loan N██████████

# MODIFICATION OF DEED OF TRUST

Borrower ("I"):  JEROME M. BURAK and MARY K. BURAK, HUSBAND AND WIFE AS COMMUNITY
PROPERTY WITH RIGHT OF SURVIVORSHIP. If more than one Borrower or Mortgagor is executing this
document, each is referred to as "I." For purposes of this document words signifying the singular (such as
"I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"):  Owner, by and through Rushmore Loan Management Services LLC,
as current servicer and agent, whose address is 15480 Laguna Canyon Road, Irvine, California
92618
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
January 24, 2003 ████████████
Loan Number ███████████
Property Address ("Property"):  10141 NEVADA AVENUE
                                CHATSWORTH AREA, CA 91311
 Legal Description:
AS SET FORTH IN THE DEED OF TRUST

Prior instrument reference: Instrument No: 03 0378930, of the Official Records of LOS ANGELES
County, CA.

If my representations and covenants in Section 1 continue to be true in all material respects, then this
Modification of Deed of Trust and Home Affordable Modification Agreement ("Agreement") will, as set
forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by
the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are

██████████████████████

Mortgage Cadence Document Center © 9051CA 01/14         Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                                        Form 3157  3/09  (rev. 10/10) (page 1 of 8 pages)

referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **December 1, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **December 1, 2016.**



A. The Maturity Date will be: **November 1, 2056**.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$292,601.25** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. **$10,234.62** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$282,366.63**. Interest at the rate of **4.500%** will begin to accrue on the Interest Bearing Principal Balance as of **November 1, 2016** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **December 1, 2016**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|--------------|---------------------------|-----------------------------------|-------------------------------|----------------------|-------------------|----------------------------|
| 1-40 | 4.500% | November 01, 2016 | $1,269.42 | $436.35 May adjust periodically | $1,705.77 May adjust periodically | December 01, 2016 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in



Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Section 3.C.

F.   I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.   **Additional Agreements.**  I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted

under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.    That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.    That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.    Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.    That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.    That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified,

Mortgage Cadence Document Center © 8051CA 01/14    Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157  3/09  (rev. 10/10) (page 5 of 8 pages)

or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

_Jerome M. Burak_ _____ (Seal)
JEROME M. BURAK -Borrower

_Mary K. Burak_ _____ (Seal)
MARY K. BURAK -Borrower

_____ [Space Below This Line For Acknowledgments] _____

┌─────────────────────────────────────────────┐
│ A notary public or other officer completing this certificate │
│ verifies only the identity of the individual who signed the │
│ document to which this certificate is attached, and not │
│ the truthfulness, accuracy, or validity of that document. │
└─────────────────────────────────────────────┘

State of California }

County of _Los Angeles_ )

On _May 22, 2017_ before me, _Simee Schiffman, Notary Public_ personally appeared
_Jerome M. Burak and Mary K. Burak_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
                                                   ┌──────────────────────────────┐
                                                   │        SIMEE SCHIFFMAN       │
                                                   │     Commission # 2092984     │
Signature _____ (Seal)             │   Notary Public - California  │
NOTARY MUST PRINT OR TYPE                           │      Los Angeles County      │
                                                   │ My Comm. Expires Jan 5, 2019 │
                                                   └──────────────────────────────┘
```

This must be printed or typed in a manner that is photographically reproducible (GC27201.5)
Name of the notary: _Simee Schiffman_
County of notary's principal place of business: _Los Angeles_
Notary's phone number: _(818) 577-8449_
Notary's registration number: _2092984_
Commission expiration date: _January 5, 2019_

Origination Company: Rushmore Loan Management Services LLC
NMLSR I█████████

Rushmore Loan Management Services LLC

By: _____ (Seal) - Lender
Name: _____ Kevin Elliott
Title: _____ Senior Vice President

_____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

State of _____
County of _____

On _____ before me, _____ personally appeared
_____, the _____ of
_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NOTARY MUST PRINT OR TYPE
This must be printed or typed in a manner that is photographically reproducible (GC27201.5)
Name of the notary: _____
County of notary's principal place of business: _____
Notary's phone number: _____
Notary's registration number: _____
Commission expiration date: _____

MULTISTATE MODIFICATION OF DEED OF TRUST – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Mortgage Cadence Document Center © 8051CA 01/14                                    Form 3157 3/09 (rev. 10/10) (page 8 of 8 pages)

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number:

FHA/VA Case Number:

Borrower(s):   JEROME M. BURAK and MARY K. BURAK

Property Address:   10141 NEVADA AVENUE, CHATSWORTH AREA, CA 91311

Servicer:   Rushmore Loan Management Services LLC

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this 25th day of April, 2017.


_Jerome M Burak_ _____ (Seal)
JEROME M. BURAK -Borrower

_Mary K Burak_ _____ (Seal)
MARY K. BURAK -Borrower




CHASE

This page is part of your document- DO NOT DISCARD

03 1988651

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
9:01 AM    JUL 11    2003

## TITLE(S) :



L E A D    S H E E T

FEE                                                    D.T.T

FEE $ 30 0    3T
DAF $
C-20

CODE
20

CODE
19

CODE
9____



Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of Parcels Shown

THIS FORM NOT TO BE DUPLICATED

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24

Consumer Loan Records Center          rded
1170 Silber RD, Houston, TX 77055

**08 1988651**

When Recorded Mail to:    WAMU
Optima Information Solutions @ 1700
Carnegie Ave. #200, Sa. Ana, CA 92705
ATTN: OPTIMA

 **Washington
Mutual**

**EQUITY LINE OF CREDIT
DEED OF TRUST**



THIS DEED OF TRUST (Security Instrument) is between:
JEROME M. BURAK AND MARY K. BURAK

whose address is: __10141 NEVADA AVENUE__
__CHATSWORTH, CA 91311_____ ("Grantor"),
__OPTIMA_____, a
__CALIFORNIA_____ corporation, the address of which is
__1700 CARNEGIE AVE__
__SANTA ANA, CA 92705_____ ("Trustee");   and
  Washington Mutual Bank, FA, a federal association, which is organized and
existing under the laws of the United States of America, and whose address is
400 E. Main Street, Stockton, CA 95290 ("Beneficiary") and its successors or
assigns.

  1.   **Granting Clause.** For the benefit of Beneficiary, Grantor hereby grants, bargains, sells and
conveys to Trustee in trust, with power of sale, the real property in ____LOS ANGELES____
County, California, described below, and all rights and interest in it Grantor ever gets:
THE NORTH 60 FEET OF THE SOUTH 120 FEET OF THE WEST 266 FEET OF LOTS 93 & 94,
SECTION 13, CHATSWORTH PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, AS PER MAP RECORDED IN BOOK 30, PAGE(S) 91 OF MISCELLANEOUS RECORDS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. EXCEPT THE WEST 105 FEET.

Tax Parcel Number: _____2745-002-116_____ together with all

4960 (04/18/03) W4.2                     BANK                          Page 1 of 6
                                                          Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24



insurance proceeds and condemnation proceeds related to it income, rents and profits from it; all plumbing, lighting, air conditioning and heating apparatus and equipment and other improvements; and all fencing, blinds, drapes, floor coverings, built-in appliances, and other fixtures, at any time installed on or in or used in connection with such real property.

All of the property described above will be called the "Property". If any of the Property is personal property, this Deed of Trust is also a Security Agreement which grants Beneficiary, as secured party, a security interest in all such property. Despite any other provision of this Deed of Trust, however, Beneficiary is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such security interest would be prohibited by applicable law. As used herein "State" shall refer to the state of California.

2.   **Obligation Secured.** This Deed of Trust is given to secure performance of each promise of Grantor contained herein and in a Home Equity Line of Credit Agreement with Beneficiary of even date herewith with a maximum credit limit of _____$100,000.00_____ the ("Credit Agreement"), including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Grantor under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for a variable rate of interest. Under the Credit Agreement, the Grantor may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Deed of Trust. This Deed of Trust also secures payment of certain fees and charges payable by Grantor under the Credit Agreement, certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust, and repayment of money advanced by Beneficiary to protect the Property or Beneficiary's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, all amounts due under the Credit Agreement are due and payable in full thirty (30) years from the date of this Deed of Trust (the "Maturity Date"). All amounts due under the Credit Agreement and this Deed of Trust are called the "Debt".

3.   **Representations of Grantor.** Grantor represents that:
(a)   Grantor is the owner of the Property, which is unencumbered except by: easements, reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and
(b)   The Property is not presently and will not during the term of this Deed of Trust be used for any agricultural purposes.

4.   **Promises of Grantor.** Grantor promises:
(a)   To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Beneficiary's written consent;
(b)   To allow representatives of Beneficiary to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;
(c)   To pay on time all lawful taxes and assessments on the Property;
(d)   To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
(e)   To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a), and to keep the Property free of all encumbrances which may impair Beneficiary's security;
(f)   To keep the improvements on the Property insured by a company satisfactory to Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary

08 1988651

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24

may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Beneficiary. Subject to the rights of the holder of any lien described in 3(a), Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy shall be applied to the repair of such improvements, unless doing so would impair Beneficiary's security, in which event such proceeds may be applied upon any indebtedness hereby secured. In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Grantor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale.

(g)   To sign all financing statements and other documents that Beneficiary may request from time to time to perfect, protect and continue Beneficiary's security interest in the Property. Grantor irrevocably appoints Beneficiary as Grantor's attorney-in-fact to execute, file and record any financing statements or similar documents in Grantor's name and to execute all documents necessary to transfer title if there is a default; and

(h)   To advise Beneficiary immediately in writing of any change in Grantor's name, address or employment.

5.   **Sale, Transfer or Further Encumbrance of Property.** Subject to applicable law, the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Grantor by contract of sale or otherwise including, without limit, any further encumbrance of the Property.

6.   **Curing of Defaults.** If Grantor fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Beneficiary may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Grantor's failure to comply. Repayment to Beneficiary of all the money spent by Beneficiary on behalf of Grantor shall be secured by this Deed of Trust; at Beneficiaries option, advance may be made against the Credit Agreement to pay amounts due hereunder; such shall not relieve Beneficiary from liability for failure to fulfill the covenants in Section 4. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Grantor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

7.   **Remedies For Default.**

(a)   Prompt performance under this Deed of Trust is essential. If Grantor does not pay any installment of the Debt or other amount due hereunder on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, or if Grantor fails to comply with any other term, condition, obligation or covenant contained in the Credit Agreement or this Deed of Trust or any rider thereto, or any other deed of trust, mortgage, trust indenture or security agreement or other instrument having priority over this Deed of Trust, or if any representation of Grantor herein was false or misleading, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary, and the total amount owed by Grantor shall thereafter bear interest at the rate(s) stated in the Credit Agreement. Beneficiary may then or thereafter advise Trustee of the default and of Beneficiary's election to have the Property sold pursuant to Trustee's power of sale in accordance with applicable law and deliver to Trustee any documentation as may be required by law. After giving any notices and the time required by applicable law, Trustee shall sell the Property, either in whole or in separate parcels or other part, and in such order as Trustee may choose, at public auction to the highest bidder for cash in lawful money of the United States which will be payable at the time of sale all in accordance with applicable law. Anything in the preceding sentence to the contrary notwithstanding, Beneficiary

**03  1988651**

may apply the Debt towards any bid at any such sale. Trustee may postpone any such sale by providing such notice as may be required by law. Unless prohibited by law, any person, including the Grantor, Beneficiary or Trustee, may purchase at any such sale. Trustee shall apply the proceeds of the sale as follows: (i) to the expenses of the sale, including a reasonable trustee's fee and lawyer's fee; (ii) to the obligations secured by this Deed of Trust; and, (iii) the surplus, if any, shall go to the person(s) legally entitled thereto.

(b)   Trustee shall deliver to the purchaser at the sale its deed, without warranty, which shall convey to the purchaser the interest in the Property which Grantor had or had the power to convey at the time of execution of this Deed of Trust and any interest which Grantor subsequently acquired. The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust. This recital shall be prima facie evidence of such compliance and conclusive evidence of such compliance in favor of bona fide purchasers and encumbrancers for value.

(c)   To the extent permitted by law the power of sale conferred by this Deed of Trust is not an exclusive remedy. In connection with any portion of the Property which is personal property, Beneficiary shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the state of California.

(d)   By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8.   **Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the Debt, shall, except as required by applicable law, be paid to the Debt.

9.   **Fees and Costs.** Grantor shall pay Beneficiary's and Trustee's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Deed of Trust; in any lawsuit or proceeding which Beneficiary or Trustee prosecutes or defends to protect the lien of this Deed of Trust; and, in any other action taken by Beneficiary to collect the Debt, including without limitation any disposition of the Property under the State Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

10.   **Reconveyance.** Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary, or following satisfaction of the obligations secured hereby and Beneficiary and Trustee shall be entitled to charge Grantor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law. If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or reconveyance of your security instrument for a reasonable period of time to enable us to post to your Credit Line Account any advances that you have received.

11.   **Trustee; Successor Trustee.** Beneficiary may, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law. The successor Trustee shall be vested with all powers of the original trustee. The Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Grantor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

12.   **Savings Clause.** If a law, which applies to this Deed of Trust or the Credit Agreement and which sets maximum loan charges, is finally interpreted by a court having jurisdiction so that the interest or other loan charges collected or to be collected in connection with this Deed of Trust or

03  1988651

the Credit Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Grantor which exceeded permitted limits will be refunded to Grantor. Beneficiary may choose to make this refund by reducing the principal owed or by making a direct payment. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

13. **Miscellaneous.** This Deed of Trust shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The term "Beneficiary" shall mean the holder and owner of the Credit Agreement secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one person shall be read to refer to more than one person if two or more have signed this Deed of Trust or become responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with federal law and, to the extent federal law doesn't apply, the laws of the state of California. If any provision of this Deed of Trust is determined to be invalid under law, the remaining provisions of this Deed of Trust shall nonetheless remain in full force and effect.

14. **Beneficiary and Similar Statements.** Beneficiary may collect a fee in the maximum amount allowed by law for furnishing any beneficiary statement, payoff demand statement or similar statement.

By signing below, Grantor accepts and agrees to the provisions of this Deed of Trust and any rider(s) executed by Grantor concurrently therewith.

DATED AT _Ventura_, _California_ this _31st_ day of _May_ _2003_.

GRANTOR(S):

_Mary K Burak_
MARY K BURAK )

_Jerome M Burak_
JEROME M BURAK

03 1988651

STATE OF _California_            )
                                ) SS
COUNTY OF _Los Angeles_         )

On _May 31, 2003_, before me, _Peter B Michinock III, Notary Public_,
a Notary Public in and for the State of California, personally appeared
_Jerome M Burak_ and _Mary K Burak_ (personally
known to me) (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal

[Seal: PETER B. MICHINOCK III,
Commission # 1259174
Notary Public – California
Ventura County
My Comm. Expires May 12, 2004]

_____
Notary Public in and for the State of California.

My commission expires: _May 12, 2004_

## REQUEST FOR FULL RECONVEYANCE
Do not record. To be used only when Grantor's
indebtedness has been repaid and Credit Agreement cancelled.

TO:   TRUSTEE _____

The undersigned is Beneficiary of the within Deed of Trust, and the legal owner and holder of
the Home Equity Line of Credit Agreement secured thereby. Said Deed of Trust is hereby
surrendered to you for reconveyance and you are requested, upon payment of all sums owing to
you, to reconvey, without warranty, to the person(s) entitled thereto, the right, title and interest
now held by you thereunder.

_____
WASHINGTON MUTUAL BANK, FA

By _____

Its _____

03 1988651

4360 (04/18/03) W4.2                          BANK                          Page 6 of 6

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24




**Washington Mutual**

# the house™

### HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

Date: 05/30/2003
Loan Number: _____

**Introduction.** This Home Equity Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through _____ WASHINGTON MUTUAL BANK, FA _____ ; in this Agreement, the words "Borrower," "you," "your," "Customer," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named below. The words "we," "us," "our," "Bank," and "Lender" mean _____ WASHINGTON MUTUAL BANK, FA _____ or any successor or assign. The word "Card" means each credit card that we issue that will enable you to obtain advances on your Credit Line, whether in the form of purchase transactions, cash advances or otherwise. You and we agree to the following terms and conditions.

**Promise to Pay.** You promise to pay to us, or our order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement. You will pay the Credit Line according to the terms of this Agreement. If there is more than one of you, each is jointly and severally liable on this Agreement. This means that we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you, even if in excess of the authorized Credit Limit. Each of you authorizes any other Borrower, on his or her request alone, to cancel the Credit Line, request and receive credit advances and to do all actions in connection with the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain fully responsible hereunder. By signing below, each of you requests that we issue each of you a Card.

Your use of the Card at automated teller machines is subject to our rules relating to ATM transactions.

**Credit Limit.** This Agreement covers a revolving line of credit for ____ $100,000.00 ____, which will be the "Credit Limit" under this Agreement. You may borrow against the Credit Limit, repay any portion of the amount borrowed and reborrow up to the amount of the Credit Limit. If there is more than one of you, each of you shall have the right to borrow up to the full amount of the Credit Limit, but the aggregate amount advanced to all of you shall not exceed the Credit Limit. Your Credit Limit is the maximum amount of the principal you may have outstanding at any one time. You agree not to attempt, request or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. We may, at our option, pay amounts requested in excess of your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to immediately repay the amount by which the balance of your Credit Line Account exceeds your Credit Limit, regardless of which of you requested the advance, and even if we have not yet billed you for such amount.

**Collateral.** To secure your performance of your obligations under this Agreement, you are giving us a deed of trust, trust indenture, mortgage or security agreement (the "Security Instrument") on real property located at: _____ 10141 NEVADA AVENUE   CHATSWORTH, CA 91311 ____ and other property described therein (the "Property"). The Security Instrument secures all advances and other amounts owed under the terms of this Agreement. The Security Instrument also covers after-acquired property located on or attached to real property described therein. Regardless of the terms of any other security instrument that you have with us, no personal property or real property, other than the Property covered by the Security Instrument or otherwise specifically referring to this Agreement, secures your obligations under this Agreement. You agree to perform your obligations under the Security Instrument in a timely manner.

**The Security Instrument Contains the Following Provisions Relating to Certain Sales, Transfers or Further Encumbrance of the Property:**

The loan is personal to Grantor and the entire debt shall become immediately due and payable in full upon any sale or other transfer of the Property or any interest therein by the Grantor by contract of sale or otherwise.

[X] If this box is checked, the following paragraph applies:
**Occupancy.** You represent you occupy the Property as your principal residence. If you (or if there is more than one, any one of you) cease to occupy the Property as your principal residence, we may, at our sole option, suspend or terminate all further borrowing privileges under this Agreement. You must immediately advise us if you cease to occupy the Property as your principal residence.

**Length of Draw and Repayment Period: Balloon Payment.** You may obtain advances of credit for up to ten (10) years after the date of this Agreement (the "Draw Period"). You may extend the Draw Period for up to ____ TWO ____ additional periods of ten (10) years each, provided that at the time of each extension: (i) no event is then existing that would enable us to suspend or terminate your borrowing privilege to obtain advances as set forth herein; and (ii) we are then offering a line of credit program to new customers on terms other than ANNUAL PERCENTAGE RATE, substantially identical to those set forth in this Agreement. We reserve the right, in our sole discretion, to discontinue offering this line of credit program to new customers at any time. If we do decide to discontinue offering the program to new customers, there will be no further advances of the Draw Period, but your right to obtain advances of credit for the remainder of the then current Draw Period and the repayment terms of your Account will not be affected. After the Draw Period ends, you will no longer be able to use your Cards, Checks or other means of access to obtain advances.

After the Draw Period ends, there may be a period during which payments will be due and payable under this Agreement but during which you will no longer be able to obtain advances (the "Post Draw Period"). If the Draw Period is for ten (10) years, the Post Draw Period will be for twenty (20) years; if the Draw Period is for twenty (20) years, the Post Draw Period will be for ten (10) years; if the Draw Period is for thirty (30) years, there will be no Post Draw Period and the entire balance hereunder will be due and payable at the end of the Draw Period. Lender may, at its option, make advances to pay costs and fees hereunder or under the Security Instrument even if the Draw Period has expired; FINANCE CHARGES will continue to accrue and periodic payments will continue to be due as set forth herein until the Maturity Date. If not sooner paid in full the entire balance hereunder shall be due and payable in full thirty (30) years from the date of this Agreement (the "Maturity Date").

The minimum monthly payments will not fully repay the outstanding balance of your Credit Line Account by the Maturity Date. Unless sooner repaid, all remaining sums which you owe under this Agreement shall be due and payable in full in a single "balloon payment" on the Maturity Date. All sums which are owed you by us shall bear interest from and after the Maturity Date at the variable ANNUAL PERCENTAGE RATE indicated below.

**FINANCE CHARGES.** FINANCE CHARGES on each advance accrue from the date we make the advance until the date the advance is paid in full. This means there is no free ride period which would allow you to avoid a FINANCE CHARGE on advances on your Credit Line. FINANCE CHARGES accumulate each day until the exact current payoff amount is received and posted to your Credit Line Account. The exact current payoff amount as of any day is the aggregate of all advances, plus all accrued and unpaid FINANCE CHARGES plus other amounts due hereunder, if any. We will not charge interest on any undisbursed loan proceeds.





The periodic FINANCE CHARGE on your Credit Line for each billing period is a function of the Daily Periodic Rate (shown on your Periodic Statement as defined below, the "Average Daily Balance" of your Credit Line Account (shown on your Periodic Statement) and the number of days in the billing period.

(a) The "Daily Balance" of your Credit Line Account for each day will be the Total Balance at the beginning of that day plus new advances and charges less all payments and credits received that day and less any over limit fees, late fees and unpaid FINANCE CHARGES. The "Total Balance" is all amounts due on the Credit Line Account.

(b) The "Average Daily Balance" is the sum of the Daily Balances of all days in the billing period divided by the number of days in the billing period.

(c) The Daily Periodic Rate may vary within a single billing period. If the Daily Periodic Rate does not vary during the billing period, the periodic FINANCE CHARGE for the billing period is the Average Daily Balance multiplied by the applicable Daily Periodic Rate multiplied by the number of days in the billing period. If there is more than one Daily Periodic Rate within a billing period, the FINANCE CHARGE for the billing period will be the sum of the FINANCE CHARGES computed by multiplying the Average Daily Balance by each Daily Periodic Rate and then multiplying that number by the number of days that the Daily Periodic Rate is in effect during that billing period.

Additional FINANCE CHARGES may be imposed as provided in the paragraphs entitled "Minimum Draws and Other Limitations" and "Closing Costs and Lien Related Charges."

Daily Periodic Rate and ANNUAL PERCENTAGE RATE. We will determine the Periodic Rate and corresponding ANNUAL PERCENTAGE RATE as follows:

For Credit Limits of $20,000 or greater, the ANNUAL PERCENTAGE RATE will be ____0.000____ percentage points (the "Margin") over the Index or ____0.000 %____ whichever is greater. For Credit Limits less than $20,000, the ANNUAL PERCENTAGE RATE will be ____0.000____ percentage points (the "Margin") over the Index or ____5.0 %____, whichever is greater. The Index is the Prime Rate most recently published by the *Wall Street Journal* in the "MONEY RATES" table effective on the 15th day of the month, prior to the Interest Change Date as defined below. If more than one Prime Rate is identified in the *Wall Street Journal's* "MONEY RATES" table, the Index shall be the highest of such rates. If the Index is no longer available, we will choose a new Index. The new Index will have a historical movement substantially similar to the original Index, and the new Index and Margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable.

The ANNUAL PERCENTAGE RATE will be divided by 365 (366 in a leap year) to get the Daily Periodic Rate. The Current Daily Periodic Rate (based on Index plus Margin) is ____0.01164%____ (that is an ANNUAL PERCENTAGE RATE of ____4.250 %____) as of the date below. If the box is checked below, your current Daily Periodic Rate is as indicated below.

The Daily Periodic Rate and ANNUAL PERCENTAGE RATE may increase or decrease monthly on the first calendar day of the month ("Interest Change Date") after any initial period set forth below. However, except as set forth below, the Daily Periodic Rate will never be more than ____0.04932%____ (that is an ANNUAL PERCENTAGE RATE of ____18.000 %____) and, if the Credit Limit is less than $20,000, the Daily Periodic Rate will never be less than ____0.01370 %____ (that is an ANNUAL PERCENTAGE RATE of ____5.0 %____). The ANNUAL PERCENTAGE RATE does not include costs other than interest. Increases in the Daily Periodic Rate and ANNUAL PERCENTAGE RATE will increase your Minimum Monthly Payment, as defined below, the FINANCE CHARGES and your final "balloon" payment due on the Maturity Date.

☐ If this box is checked, notwithstanding the above, the initial Daily Periodic Rate used to compute the FINANCE CHARGE is _____% (that is an ANNUAL PERCENTAGE RATE of _____%). Immediately following the six month anniversary of the Effective Disbursement Date, defined below, and on the first day of the month every month thereafter (each "Interest Rate Change Date"), your rate may change as set forth above.

If a law, which applies to this Agreement and which sets maximum interest rates, is finally interpreted by a court having jurisdiction so that the interest or other charges collected or to be collected in connection with this Agreement exceed the permitted limit, then to the extent permitted by law: (1) the interest and/or other charges payable hereunder shall be reduced by the amount necessary to reduce them to the permitted limit; and (2) any sums already collected which exceed the permitted limit will be refunded to you. We may choose to make this refund by reducing the principal you owe under this Agreement or by making a direct payment to you.

Cancellation Fee. If you cancel your Credit Line Account during the first 36 months following the Effective Disbursement Date, defined below, you will be charged a cancellation fee as follows:

☒ A cancellation fee will not apply to this loan. In any event, if you pay off early you will not be entitled to a refund of the loan fee (if any) or any other finance charges already paid.

☐ If you are entering into this Agreement to increase an existing home equity line of credit from us (the "Previous Credit Line Account") and the agreement relating to the Previous Credit Line Account provided for a cancellation fee then you will be charged a cancellation fee based on the original terms of the Previous Credit Line Account Agreement if you cancel this Agreement within 36 months following the Effective Disbursement Date (as defined in the Agreement relating to the Previous Credit Line Account).

Credit Advances. Provided you are not in default and your right to credit advances has not been terminated, suspended or cancelled, you may obtain advances after the Effective Disbursement Date (as defined below) as follows:

(a) Writing a preprinted Check that we supply to you for use with your Credit Line ("Check" or "Checks").

(b) Using the Card to effect purchases, to obtain cash advances at authorized automated teller machines (using the personal identification number that we will supply to each of you) or to obtain cash advances at other locations.

(c) Unless prohibited by law, requesting a credit advance from your Credit Line by telephone to be applied to a deposit account with us designated by you for any of you, if more than one) and acceptable to us. If telephonic access is authorized hereunder, you may access your Credit Line by using your deposit account number and the passcode supplied by us. Use of your deposit account number and passcode by you, or anyone to whom you have given these numbers, will act as your authorization and signature. Advances requested by telephone must be deposited in your designated deposit account. You authorize and direct us to transfer advances from the Credit Line Account to your designated deposit account, provided you identify yourself to our satisfaction when requesting the telephonic draw.

(d) Requesting a credit advance in person at any of our Financial Centers.

All advance requests by use of Checks must be in U.S. currency.

Foreign Exchange. If you make a purchase or an advance in foreign currency, it will be converted by Visa International into U.S. Dollars. Visa International will use the procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently, these regulations provide that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate in effect one (1) day prior to the processing date, increased by 1%. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may not be the same as, greater than or less than the amount that would be calculated by your conversion through a financial institution in the country in which the purchase or advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

Reviewer ID: Brittany Bragg 2019-11-19 08:18:24

  

The "Effective Disbursement Date" means a date on or after the date when the Agreement is accepted by us in the state of ___CALIFORNIA___ and you have met all conditions for the Credit Line. You agree and understand that you may not receive any credit advance under this Agreement until after the Effective Disbursement Date.

Each of you irrevocably authorizes us to add any of the above advance request features at any time and honor requests by any of these methods requested by any other of you, at any time in the future, even if not presently requested. You also authorize us to add any new access service or device which might be available from time to time as any one of you might request in connection with this Credit Line. You further agree that the terms and conditions of this Agreement, together with any specific terms covering such new service or device, will govern any future services or with use of such devices.

Each of you further irrevocably authorizes us to charge your Credit Line Account for advance requests made by any of you, even if such would cause the balance to exceed your Credit Limit. All such advances constitute a loan to you and shall be subject to FINANCE CHARGES and other terms and conditions hereof.

In addition, we may charge your Credit Line to pay fees and costs that you are obligated to pay under this Agreement or under any document related to your Credit Line, including the Security Instrument. We may also charge your Credit Line for funds required for continuing insurance coverage as described in the Security Instrument or other documents related to your Credit Line or to pay any cost or expense to protect or perfect our security interest in the Property. These costs and expenses include, without limit, payments to cure defaults under any existing lien on the Property. If you do not pay your property taxes, we may charge your Credit Line Account and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease funds available under your Credit Line and will be considered part of your Daily Balance for purposes of calculating FINANCE CHARGES. Nothing in this paragraph requires us to provide any advances under this paragraph.

**Adjustments.** We may make adjustments to your Credit Line Account from time to time which reflect corrections, for example, if advances or credits were posted in the wrong amount, or to the wrong account, if posting is delayed or an item is returned unpaid.

**Minimum Draws and Other Limitations.** If the advance is by means of a Card, there is no minimum amount for purchase transactions under this Agreement. In all other situations, you may make requests for advances in amounts of not less than $100.00 without a Transaction Fee FINANCE CHARGE. We may, at our option, refuse to accept an advance in an amount of less than $100.00 or, at our option, honor such request and charge you a Transaction Fee FINANCE CHARGE of 4% of the amount advanced.

We may, but reserve the right not to, honor any requests for advances hereunder in the following circumstances:
    (a)   If your credit privileges have been cancelled, suspended or terminated hereunder.
    (b)   Your Credit Limit is currently exceeded or would be exceeded if we honored the advance requested.
    (c)   Your Check is post-dated (written and presented before the date on the item) or stale dated (presented more than six months after the date of the item).
    (d)   Your Check bears a restriction or notation.
    (e)   Your Checks have been reported lost or stolen or, if telephone or other transfers requiring a passcode have been authorized hereunder, you have reported that your passcode has been compromised.
    (f)   You are in material default of this Agreement or would be so if we honored the advance request.
    (g)   We receive conflicting instructions or demands from any of you.
    (h)   If you have caused us to prepare a payoff demand statement setting forth the amounts required to satisfy your obligations under this Agreement.

If we honor a Check with a restriction or notation (e.g. void after six months or two signatures required), we may disregard such restriction or notation. If you write a Check with a restriction or notation or which is post or stale dated, such is between you and the payee only and shall have no effect on us. You agree to accept all responsibility for payment of such items.

If we receive conflicting demands or instructions from any of you, we may, at our option, refuse to make any advance that has not been requested by all of you together. In no event will we be liable for delay or refusal to follow instructions that occurs as a result of an actual or apparent conflict.

You agree to indemnify and hold us harmless for any claim or loss the payee or any other endorser or depositing or collecting bank may assert regarding such restrictions, notations or post or stale dated items. You further agree to indemnify and hold us harmless for any claim or loss relating to honoring or refusing to honor any instructions or demands which we believe may be conflicting.

If we honor any advance request under any of these conditions, you must repay us, subject to applicable laws, for the amount of the advance in accordance with the terms of this Agreement. We will not be liable for failure to honor any draw request under any of these conditions. Our liability, if any, for wrongful dishonor of an advance request is limited to your actual damages, shall not include consequential damages and in no event will such exceed the amount of the advance request.

Checks may be processed mechanically based on information encoded on the item. Checks not meeting our format and encoding specifications may not be honored. The signature should match the signature on file with us, however, we may not verify the signature if the item is processed mechanically. Checks bearing signatures which in our opinion do not satisfactorily compare with the specimen signatures may be rejected and returned unpaid and we will not be liable for wrongful dishonor related thereto.

We do not "certify" Checks drawn on your Credit Line.

Checks or advance requests, but not Card purchases or transactions, that are not honored for any reason will be assessed a Reject Fee of $20.00.

**Illegal Transactions.** Notwithstanding anything in this Agreement to the contrary, you agree that you will not use the Card, a Check or other access device to engage in an illegal transaction. This includes, but is not limited to, illegal gambling.

**Periodic Statement.** Each month your Credit Line Account has any balance owing or a credit balance, or each month in which a FINANCE CHARGE is imposed, we will mail to you a billing statement ("Periodic Statement") showing, among other things, all new transactions since the prior Periodic Statement closing date, the Periodic Statement closing date, the total amount you owe us as of the Periodic Statement closing date (labeled "New Balance"), the FINANCE CHARGES, other charges and ANNUAL PERCENTAGE RATE for the billing period covered by the Periodic Statement. The Periodic Statement may not be on a calendar month basis. We reserve the right to change the Periodic Statement closing date.

We may choose not to return Checks along with your Periodic Statement and may retain copies of such Checks. If you request copies of Checks or other research relating to your Credit Line Account, we may assess a copy fee of $1.00 per item and research fees of $10.00 per hour.

 

Payments. Payments are due monthly on a date (the "Payment Due Date") which we select, between and including the 1st through the 28th, and which date may be changed from time to time, at our option. Your minimum monthly payment ("Minimum Payment") during both the Draw Period and the Post Draw Period will be equal to all accrued but unpaid FINANCE CHARGES, Late Fees and Other Fees and Charges.

You may pay more than the Minimum Payment due without penalty at any time. Payments in excess of your Minimum Payment do not relieve you of your obligation to continue to make your Minimum Payments.

All payments must be made in good funds by check, money order, wire transfer, automatic or other transfer from an account at an institution offering such service, or other instrument in U.S. Dollars. Such payments shall be made to:

WASHINGTON MUTUAL BANK, FA
CONSUMER LOAN SERVICING
PO BOX 91006
SEATTLE, WA 98111      or to the address appearing on your Periodic Statement for receipt of payments. If made by mail, such shall be postage prepaid. Payments received will be applied against your outstanding balance in the following order: to accrued but unpaid FINANCE CHARGES, then to late fees, then to other fees and charges, then to principal not yet due.

We can accept and apply any late or partial payments or payments marked "Payment in Full" or similar statement, or with a request to apply a payment in a particular manner to amounts you owe under this Agreement without liability on our part and without losing any of our rights under this Agreement.

Closing Costs and Lien Related Charges. You agree to pay the following fees and charges at the time you open your Credit Line Account or, if Federal law gives you the right to rescind this Agreement, upon expiration of the rescission period. They will be charged to your Credit Line Account on the Effective Disbursement Date unless paid in cash to us on or before that date. If these amounts are charged to your Credit Line Account, FINANCE CHARGES on these amounts will begin to accrue immediately:

FINANCE CHARGES            OTHER CHARGES
FLOOD DETERMINATION FEE        $8.50

At closing or while your Credit Line Account is open, you may have to pay a fee, estimated to be $50.00 to $260.00, and costs to have our lien subordinated if we agree to such, at our option. Such fee is considered a FINANCE CHARGE. In addition, at the time your Credit Line Account is terminated you may have to pay a fee and costs to have our lien reconveyed/released/recorded, estimated to be up to $65.00.

Annual Fee. You agree to pay an annual fee of $45.00 ("Annual Fee"). The Annual Fee will be charged to your Credit Line Account on the first anniversary of your Credit Line Account and each year thereafter during the Draw Period.

Late Fees and Collection Charges. In addition to our rights upon default, if we do not receive your required Minimum Payment within  15  days after the Payment Due Date shown on your Periodic Statement, you will be charged a late fee of  FIFTEEN  dollars ( $15.00 ) or  FIVE  percent ( 5.000 %) of the amount then due, whichever is greater. In addition, upon default, unless prohibited by applicable law, you agree to pay all our reasonable costs and collection charges, including without limit, whether or not there is a lawsuit, attorneys' fees and legal expenses, including without limit, for bankruptcy or civil proceedings including our efforts to modify or vacate an automatic stay or injunction, appeals and any anticipated post-judgment collection services and whether or not such are incurred by our employees or third parties.

Other Fees and Charges.
    (a) Returned Items. You may be charged $20.00 if you pay your Credit Line obligations with a check, draft, other item or transfer that is dishonored for any reason, unless applicable law requires a lower charge or prohibits such charge.
    (b) Stop Payment. You may be charged $20.00 when you request a stop payment on a Check. A stop payment shall be effective for such period as provided by law and must be delivered to us in the manner prescribed by law or by method acceptable to us in our sole discretion and in sufficient time for us to act. If a stop notice expires, you must renew as set forth above and you may be assessed an additional Stop Payment Fee. There is no right to stop payment on transactions by use of a Card or other means of access.
    (c) Over Limit Charge. You may be charged  $29.00  for each advance which causes you to exceed, or if you are then in excess of, your Credit Limit.
    (d) A cash advance fee FINANCE CHARGE of two (2)% of the cash advance obtained on the Card or $2.00, whichever is greater.
    (e) A copy fee of $1.00 each time you request a copy of a Check.
    (f) You may be charged a $50.00 fee each time you order a pay off statement on your Credit Line Account.
    (g) If you ask us to research a Check, you may be charged a Research Fee of $10.00 per hour.
    (h) If you make a transaction with a Check and we reject the Check, you may be charged a $20.00 Reject Fee.

If you use your Card to obtain cash advances at other institutions those institutions may impose additional transaction fees.

Loss or Theft. You may be liable for unauthorized use of your Credit Line Account. You will not be liable for unauthorized use that occurs after you notify us. You will not, in any event, be liable for unauthorized use of the Card. Notify us by telephone, telegraph, letter or any other reasonable means (but not on or with your periodic payment) that any unauthorized use of your Credit Line Account has or may occur as a result of loss or theft of one or more of your Checks, Cards or any other access device or if you believe someone else knows your personal identification number or your passcode for making telephone or other advance requests. Such notice must be given within a reasonable amount of time. Written notice is not effective until received by us, or whether or not received, ordinarily at the expiration of the time required for transmission, whichever is earlier.

Send your notice to:
WASHINGTON MUTUAL BANK, FA
Consumer Loan Servicing
PO Box 1
Northridge, CA 91328-1151 or call    (800) 556-5678 .  You agree to reasonably assist us in determining the facts and
circumstances relating to any unauthorized use of your Credit Line Account.

**Setoff.**  You authorize us, unless prohibited by applicable law, to charge or setoff all sums owing on this Agreement against any
and all accounts, whether checking, savings or otherwise, including without limit, all accounts held jointly with someone else and
all accounts you may open in the future.

**Termination and Suspension of Privileges; Acceleration.**
We may terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge
you certain fees, if any of the following happen:
  (a)   You commit fraud or make a material misrepresentation at any time in connection with this Credit Line Account.  This
can include, for example, a false statement about your income, assets, liabilities or any other aspect of your financial condition.
  (b)   You do not meet the repayment terms of this Agreement.
  (c)   Your action or inaction adversely affects the Property or our rights in the Property.  This can include, for example,
failure to maintain required insurance, waste or destructive use of the Property which impairs our security, failure to pay taxes,
death of the last Borrower on the Credit Line, death of one or more persons liable on the account which impairs our security,
transfer of title or sale of the Property, creation of a senior lien on the Property without our permission, foreclosure by the holder
of a prior lien on the Property or use of the funds or the Property for a prohibited purpose which impairs our security.

If we terminate your Credit Line, your Credit Line will be suspended and the entire balance of your Credit Line Account will be
immediately due and payable without prior notice, except as may be required by law, and you agree to pay immediately such
amount plus any other amounts due hereunder.

In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during
any period in which any of the following are in effect:
  (a)   The value of the Property declines significantly below the value as determined by us at the time you applied for your
Credit Line Account.  This includes, for example, a decline such that the difference between the Credit Line and the available
equity is reduced by fifty percent (50%) and may include a smaller decline depending on individual circumstances.
  (b)   We reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material
adverse change in your financial circumstances.
  (c)   You are in default of a material obligation of this Agreement.  We consider all of your obligations to be material.
Categories of material obligations include, for example, the events described above permitting us to terminate, obligation to pay
fees and charges, obligations and limitations on receipt of credit advances, obligations concerning maintenance or use of the
Property or proceeds, obligations to pay and perform the terms of the Security Instrument or any other deed of trust, mortgage,
trust indenture, security agreement or lease on the Property, obligations to notify us and to provide documents and information to
us, such as updated financial information and obligations to comply with applicable law, such as zoning restrictions.
  (d)   We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this
Agreement.
  (e)   The priority of our security interest in the Property is adversely affected by government action to the extent that the
value of the security interest is less than 120% of the Credit Line.
  (f)   We have been notified by a government authority that continued advances may constitute an unsafe and unsound
business practice.
  (g)   If the maximum ANNUAL PERCENTAGE RATE has been reached.

If we suspend your Credit Line, you will lose your right to obtain credit advances.  However, all other terms of this Agreement
will remain in effect and be binding upon you, including, without limit, your liability for any further unauthorized use of any
Checks, or other access devices or service and for advances related to fees and charges assessed or costs incurred by us.

If your Credit Line is cancelled, suspended or terminated, you agree not to attempt to write or deliver any Checks or use a Card or
any other access service or device.  Any use of Checks, Cards or other access service or device may be considered fraudulent.
You will also remain liable for any further use of Checks, Cards or other access service or device even after cancellation
(regardless of whether you cancel or we cancel), termination or suspension, including all FINANCE CHARGES and Other Fees and
Charges.  If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or release of
your Security Instrument for a reasonable period of time to enable us to post to your Credit Line Account any advances that you
have received.

To the extent permitted by law, any rights hereunder shall be in addition to any other rights Lender may have hereunder or at law
or in equity.

**Delay in Enforcement.**  To the extent permitted by law, we may delay or waive the enforcement of any of our rights under this
Agreement without losing that right and any other right; and if we delay or waive any of our rights, we may enforce that right at
any time in the future without advance notice.

**Presentment.**
You, to the extent permitted by law, waive any statutes of limitations, and any legal
requirements of presentment, demand, protest, notice of dishonor and notice of protest of
this Agreement.

**Credit Information.**  You agree that you will provide us with a current financial statement, a new credit application or both
annually if requested by us.  Based on this information, we may review or reapply on annual review of your Credit Line Account.  You also
agree that we may obtain credit reports on you at any time, at our sole option, annually or at our option at any other time
including, for determining whether there has been a change in your financial condition or the purpose of reviewing or collecting
your Credit Line Account.  You authorize us to release information to others (such as credit bureaus, merchants, other financial
institutions and any of our affiliate companies) about the status and history of your Credit Line Account.  You also agree that we
may release information to comply with governmental reporting or legal processes which we believe may be required, whether or
not such is, in fact, required or when necessary or helpful in completing a transaction, or when investigating a loss or a potential
loss.  YOU ARE HEREBY NOTIFIED THAT A NEGATIVE CREDIT REPORT REFLECTING ON YOUR CREDIT RECORD MAY BE
SUBMITTED TO A CREDIT REPORTING AGENCY IF YOU FAIL TO FULFILL THE TERMS OF YOUR CREDIT OBLIGATIONS.

**Transfer and Assignment.**  Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line
Account to another lender, entity or person.  Your rights under this Agreement belong to you only and may not be transferred,
assumed or assigned.  Your obligations, however, are binding upon your heirs and legal representatives.

**Notices.**  You agree to notify us immediately if you change your name, your address or your employer, if you lose any of your
Checks, Cards or other device or any other access service or device is compromised, if any unauthorized person uses your Credit
Line Account or if any of you dies, is declared incompetent or is the subject of a bankruptcy or insolvency proceeding.  You agree
that a notice of incompetence is not effective unless issued by a court having jurisdiction and we receive notice and instruction
from the court.  Notwithstanding the above, we may, at our option, accept other evidence of incompetence acceptable to us.
You agree to indemnify and hold us harmless relating to acceptance or non-acceptance of proof of incompetence in any
transactions.

  

Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices shall be deemed given when deposited in the U.S. mail, postage prepaid first class mail, or when delivered in person, or sent by registered or certified mail, or by nationally recognized overnight carrier. Notice to you shall be sent to your last known address in our records for this Credit Line Account. Notice to any of you shall be deemed notice to all of you. Notice to us shall be sent to:

WASHINGTON MUTUAL BANK, FA
CONSUMER LOAN SERVICING
PO BOX 91006
SEATTLE, WA 98111

Any party may change its address for receipt of notices hereunder by giving notice, as set forth herein, to the other parties specifying the purpose of the notice is to change the party's address.

**Tax Consequences.** You understand that neither we, nor any of our employees or representatives, makes any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest and charges and that neither we, nor any of our employees or representatives will be liable in the event interest and charges on your Credit Line are not deductible. You should consult your own tax advisor regarding the tax deductibility of interest and charges under this Agreement.

**Amendment.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time. If the change will unequivocally benefit you throughout the remainder of your Credit Line Account or if the change is insignificant (such as a change relating to our data processing systems).

**Governing Law.** Regardless of where you reside or where you use your Credit Line Account, this Agreement and your Credit Line Account will be governed by and interpreted in accordance with the laws of the United States of America and, to the extent that the laws of the United States of America are not applicable, with the internal laws of the State of CALIFORNIA (without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the United States of America or the State of CALIFORNIA to the rights and duties of the parties). This Agreement is entered into by the parties in the State of CALIFORNIA. All credit advances under this Agreement are being made by the Bank from its offices located in the State of CALIFORNIA.

**Interpretation.** The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. You agree that this Agreement is the best evidence of your agreement with us. If a court responsible for interpreting this Agreement finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid and enforced and the rest of this Agreement is therefore binding, valid and enforceable. If we go to court or otherwise seek to enforce this Agreement, we can use a copy of any Periodic Statement, this Agreement or any other document to prove what you owe us or that a transaction took place or otherwise. The copy will have the same validity as the original.

**Optional Credit Insurance.** Credit life insurance is optional and is not required to obtain this loan. No insurance will be provided unless you sign for this optional insurance as set forth below, you submit any necessary insurance applications, and the insurance is accepted by the insurance company. Only the personal who signs is insured. The terms of the coverage will be described in the policies or certificates of insurance issued by the insurance company. The credit insurance premiums will not be included in the Average Daily Balance and FINANCE CHARGES will not accrue on the premiums. Please note that even if you sign below that you want credit life insurance, you must complete an application and your application must be accepted by the insurer before insurance will be provided.

| TYPE | PREMIUM | SIGNATURE(S) |
|---|---|---|
| Single Credit Life | N/A    Per    N/A<br>per month on the Average Daily Balance | Signature of borrower to be insured |
| Joint Credit Life | N/A    Per    N/A<br>per month on the Average Daily Balance | Signatures of borrowers to be insured |
| We do not want the above optional insurance. | | |
| | Signature | Signature |

We may, to the extent permitted by law, provide insurance through an insurance company that is affiliated with us.

**Billing Rights.**

**YOUR BILLINGS RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us (on a separate sheet) at:

WASHINGTON MUTUAL BANK, FA
CONSUMER LOAN SERVICING
PO BOX 91006
SEATTLE, WA 98111

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
  *Your name and account number.
  *The dollar amount of the suspected error.
  *Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your deposit account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

  

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we can not collect the first $50.00 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

(a)   You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b)   The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Acknowledgment.**
BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT AND AGREE TO ITS TERMS.   YOU ALSO ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT.

MARY K BURAK

JEROME M BURAK

Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK

Cynthia A. Riley, Vice President



This page is part of your document - DO NOT DISCARD

# 20131090840





Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/25/13 AT 08:04AM

| | | |
|---|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |





LEADSHEET





201307250180008



SEQ:
01

RRDS - Daily



THIS FORM IS NOT TO BE DUPLICATED

E40



FOR REFERENCE ONLY: 20131090840

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by JEROME M. BURAK AND MARY K. BURAK and recorded on 07/11/2003 as Instrument # 03 1988651, in Book n/a, Page n/a in the office of the LOS ANGELES County Recorder, CA.  Modification: DT 07/15/2005 REC DT 09/27/2005 INST. 05 2329520

Property more commonly known as: 10141 NEVADA AVE, CHATSWORTH, CA 91311-2833

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on 07 / 16 /2013 (MM/DD/YYYY).
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact  POA RECORDED: 11/07/2012 DOC#: 20121694975

By: _____
Marquitta Williams.
VICE PRESIDENT

## ACKNOWLEDGEMENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On 07 / 16 /2013 (MM/DD/YYYY), before me appeared Marquitta Williams, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION,  AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 80422

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCAS[                  ]-- WAMU[                    ]          [C] FRMCA1_JPCAS3

CHASE ○

## MODIFICATION AGREEMENT

Borrower ("I/We"): Mary K. Burak and Jerome M. Burak

Lender or Servicer ("Lender"): JPMORGAN CHASE BANK, N.A.

Date of mortgage, deed of trust, or security deed ("Mortgage") and Note or Line of Credit Agreement ("Note"): May 30, 2003

Account: ▒▒▒▒▒▒

Property Address ("Property"):  10141 Nevada Avenue
                                Chatsworth, CA 91311-0060

Modification Effective Date: November 1, 2019

Original Mortgage Amount: $100,000.00

**NOTICE TO CONSUMER: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY.**

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

If my representations in Section A continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section C, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

I understand that after I sign and return both copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section B have been satisfied.

A.   **My Representations.** I certify, represent to Lender and agree:

   1.   The Property has not been condemned;

   2.   There has been no change in the ownership of the Property since I signed the Loan Documents.

B.   **Acknowledgments and Preconditions to Modification.** I understand and acknowledge that:

   1.   TIME IS OF THE ESSENCE under this Agreement. This means I must make all payments on or before the days that they are due;

   2.   If the Lender determines that any of my representations in Section A are not true and correct as of the Modification Effective Date identified in Section C, the Loan Documents will not be

Reviewer ID: Brittany_Bayes_2019-11-19_08:18:24

modified and this Agreement will terminate, or if the Loan Documents have already been modified, this Agreement will be rescinded and the Loan will revert back to the original terms of the Loan Documents. In either event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

3.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender and (ii) the Modification Effective Date (as defined in Section C) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement or any other requirements of the Program.

4.    I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

C.    **The Modification.** If my representations in Section A continue to be true in all material respects and all preconditions to the modification set forth in Section B have been met, the Loan Documents will automatically become modified on November 1, 2019 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout, this modification will not take effect. The first modified payment will be due on November 1, 2019.

1.    The Maturity Date will be: October 1, 2059.

2.    The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts"). The new principal balance of my Note will be **$247,426.48 (the "New Principal Balance").** I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.

3.    Interest at the rate of **2.625%** percent will begin to accrue on the New Principal Balance as of **October 1, 2019** ("Interest Rate Effective Date"). Beginning on the **October 1, 2024** anniversary date of the Interest Rate Effective Date, the interest rate will adjust by 1% each year until the rate of 3.5% is reached.

I will begin to make modified monthly payments on **November 1, 2019** and on the same day of each month thereafter (the "Amortizing Payment Date"). Beginning on the first Amortizing Payment Date, I will begin to make monthly payments in an amount necessary to repay the unpaid balance of the New Principal Balance in substantially equal monthly installments of principal and interest at the interest rate then in effect over the remaining amortization period of the modified Loan. With each scheduled interest rate adjustment, my monthly payment will be further adjusted to an amount necessary to repay the remaining unpaid balance of the New Principal Balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining amortization period of the modified Loan. I understand that the Lender will provide me with notice of my new interest rate and payment amount prior to the due date of any such new payment.

The estimated payment schedule for the modified Loan will be as follows:

| Years | Interest Rate | Interest Rate Effective Date | Estimated Monthly Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|------------------------------|----------------------------------|-------------------|----------------------------|
| 1-5   | 2.625%        | October 1, 2019              | $833.12                          | November 1, 2019  | 60                         |

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24

| 6 | 3.5% | October 1, 2024 | $945.34 | November 1, 2024 | 12 |
| 7-Maturity | 3.5% | September 1, 2059 | $945.34 | October 1, 2059 | 408 |

The parties agree that the New Principal Balance stated in Section C.2. excludes a portion of the unpaid principal balance, equaling $0.00 ("Deferred UPB"). The Deferred UPB shall be deferred until the earlier of the Maturity Date, prepayment of the Note, or default under the terms of the Loan Documents or this Agreement. No payments toward the Deferred UPB are required before, unless or until such an event, and no interest shall accrue on the Deferred UPB.

Notwithstanding the foregoing, I agree that unless sooner paid, all principal, interest and other amounts due under the Loan Documents shall be paid on the new Maturity Date. The above terms in this Section C.3. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

4. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

5. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section C.3.

D. **Additional Agreements.** I agree to the following:

1. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

2. That this Agreement shall supersede the terms of any modification, forbearance or workout plan that I previously entered into with Lender for my Mortgage.

3. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

4. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

5. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

6. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by the Mortgage will be due. Lender may

Reviewer ID: Brittany_Bayes_2019-11-19_08:18:24

invoke any remedies permitted by the Mortgage without further notice or demand on me.

7. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

8. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

9. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

10. That, if I am in bankruptcy upon execution of this document, I will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. I understand that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

11. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents, except as modified under the U.S. Bankruptcy Code, shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

12. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, 1-888-679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

13. That Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my mortgage loan.

14. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section D.13 shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

15. If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24

16.  If my loan is a home equity line of credit ("HELOC"), I understand that (i) access to funds in
the line of credit has been permanently closed, so I am not able to obtain any further advances,
notwithstanding any references in the Loan Documents, or otherwise, to the Loan being a line
of credit; (ii) any devices used for accessing the credit line, such as checks or credit cards, are
void; (iii) if I have had separate balances on the HELOC that were charged interest at different
interest rates, including fixed or variable rates, all balances are combined into a single balance
that will be charged interest at the rate established in Section C of this Agreement, and I will not
have the option of locking in or electing different interest rates or other payment terms in the
future; (iv) if I have had the option to pay interest-only payments on any balances, all payments
under this Agreement will be as set forth in Section C of this Agreement; and (v) if I have had
special incentive interest rates involving a reduction in my interest rate for automatic payments
or other relationships with the Lender, these special incentives no longer apply.

CR21541
BA080

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## TO BE SIGNED BY BORROWER ONLY

In Witness Whereof, the Lender and I have executed this Agreement.

Borrower(s):        Mary K. Burak and Jerome M. Burak

Account:
Property Address:        10141 Nevada Avenue
                        Chatsworth, CA 91311-0000

This Modification Agreement is between JPMORGAN CHASE BANK, N.A. and Mary K. Burak and Jerome M. Burak for the account listed above and becomes effective on **November 1, 2019.**

By signing this form, each signer confirms they read and understand all of the provisions of this agreement. Each of the signers agrees to the terms of this agreement and acknowledges receiving a completed copy.

In Witness Whereof, the Borrower(s) have executed this agreement.

*Mary K. BURAK*
Mary K. Burak - Print Name

*Mary K. Burak*                              Date: 9.28.2019
Mary K. Burak - Signature

*JEROME M. BURAK*
Jerome M. Burak - Print Name

*Jerome M Burak*                             Date: 9.28.2019
Jerome M. Burak - Signature

STATE OF  CALIFORNIA

COUNTY OF  LOS ANGELES

On 09/28/2019 before me, ALAN KAMINSKY NOTARY PUBLIC

personally appeared  MARY K. BURAK

            JEROME M. BURAK

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature                          Notary Public Seal

TO BE SIGNED BY LENDER ONLY

ALAN KAMINSKY
Notary Public · California
Los Angeles County
Commission # 2172247
My Comm. Expires Dec 15, 2020

In Witness Whereof, the Lender has executed this agreement.

Lender: JPMORGAN CHASE BANK, N.A.

By: _____

Printed Name: _____

Date: _____

STATE OF _____

COUNTY OF _____

This instrument was acknowledged before me on the _____ day of _____, 20_____,

by _____ the _____ of JPMorgan Chase

Bank, N.A., a national banking association, on behalf of said association.

[SEAL]

Notary Public – State of    _____

My Commission Expires    _____

Printed Name of Notary    _____

Signature of Notary    _____

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of LOS ANGELES                    )

On SEPTEMBER 28 2019 before me, ALAN KAMINSKY NOTARY PUBLIC
    Date                                    *Here Insert Name and Title of the Officer*

personally appeared JEROME M. BURAK
                    *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> ALAN KAMINSKY
> Notary Public - California
> Los Angeles County
> Commission # 2172247
> My Comm. Expires Dec 15, 2020

Signature _____
          *Signature of Notary Public*

*Place Notary Seal Above*

——————————————— OPTIONAL ———————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual    ☐ Attorney in Fact

☐ Trustee    ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual    ☐ Attorney in Fact

☐ Trustee    ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

Reviewer ID: Brittany_Hayes_2019-11-19_08:18:24